USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/25/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                                    :
GREATER NEW YORK MUTUAL INSURANCE                                   :
COMPANY,                                                            :
                                                                    :
                                                                    :
                              Plaintiff,                            :          24-cv-3633 (LJL)
                                                                    :
                                                                    :
                   -v-                                              :          OPINION AND ORDER
                                                                    :
                                                                    :
UNITED STATES LIABILITY INSURANCE                                   :
COMPANY,                                                            :
                                                                    :
                              Defendant.                            :
                                                                    :
---------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant United States Liability Insurance Company ("USLIC") and Plaintiff Greater

New York Mutual Insurance Company ("Greater New York") cross-move for summary

judgment.  Dkt. Nos. 35, 32.  For the following reasons, both motions for summary judgment are

granted in part and denied in part.

## BACKGROUND

The following facts are undisputed for purposes of this motion.

## I.    The Relevant Parties

This case arises out of injuries allegedly suffered by a Verizon technician while working

at the premises located at 810 East 152nd Street, Bronx, New York (the "Premises").  Abeken

Apartments LP ("Abeken") is the owner of a building located at the Premises.  Blended Family

LLC ("Blended Family") is a tenant of Abeken and leases space at the Premises.

Greater New York is an insurance company duly existing under the laws of the State of

New York with its principal place of business in New York.  Dkt. No. 1-1 ¶ 1; Dkt. No. 1 ¶ 4.  It

insured Abeken under Commercial General Liability Coverage Policy No. 1131M23422,

effective from November 1, 2020 to November 1, 2021 (the "GNY Policy").  Dkt. No. 33 (Joint

Statement of Undisputed Material Facts, hereinafter "JSUF") ¶ 55.

USLIC is a corporation organized and existing under the laws of the State of Nebraska

with its principal place of business in Wayne, Pennsylvania.  Dkt. No. 1 ¶ 5.  USLIC insured

Blended Family pursuant to Commercial General Liability Coverage Policy No. CP 1659352D,

effective from September 13, 2021 to September 13, 2022 (the "USLIC Policy").  JSUF ¶ 49.

Abeken is party as "Owner" or "Landlord" to a Standard Form of Store Lease dated

September 12, 2017 (the "Lease") with Blended Family as "Tenant" for lease of "a portion of the

ground floor and cellar community facility space" located at the Premises to be used as a "full

service child care center" (the "Demised Premises").  JSUF ¶ 41; Dkt. Nos. 33-7, 33-8.

> The Lease contains an "Alterations" provision which states, in pertinent part:
> Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent.  Subject to the prior written consent of [Abeken], and to the provisions of this article, [Blended Family], at [Blended Family's] expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner.

JSUF ¶ 43.

Paragraph 8 of the Lease, "Tenant's Liability Insurance Property Loss, Damage,

Indemnity," provides in part:

> Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of, or damage to, any property of Tenant by theft or other wise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees.

JSUF ¶ 44.

The Lease contains an Indemnification provision.  JSUF ¶ 45.  Blended Family agreed as

follows:

2

[t]o the fullest extent permitted by law . . . indemnify and hold harmless [Abeken] . . . from and against any and all liabilities, suits . . . which may be imposed upon or incurred by or asserted against any of the Indemnified Parties by reason of any of the following events occurring during the term of this Lease:

(a) Tenant and/or Tenant's general contractor and/or subcontractors and materialmen performing any construction and/or work in, at or about the Demised Premises;

(b) Tenant's use, non-use, possession, occupation, alteration, repair, condition, operation or maintenance of the Demised Premises or any part thereof;

(c) any act or failure to act on the part of Tenant or any of its agents, contractors, servants, employees, licensees or invitees;

(d) any accident, injury (including death at any time resulting therefrom) or damage to any person or property occurring in, at or about the Demised Premises;

. . .

(g) any failure on the part of Tenant to keep, observe and perform any of the terms, covenants, agreements, provisions, conditions or limitations contained in any construction agreements of which Tenant is a party, or other contracts or agreements affecting the Demised Premises, on Tenant's part to be kept, observed or performed; . . .

*Id.* Exhibit B—Part I of the Lease also requires that Blended Family's insurance include

endorsements which:

(i) set forth the Additional Insureds as additional insureds; . . . (d) provide that the insurance coverage provided to the Additional Insureds shall apply on a primary (primary source of recovery) and non-contributory basis so that the Additional Insureds' own insurance policies will not contribute to the defense or indemnification until the named insureds' policy limits (including, without limitation, all excess policies) have been applied.

JSUF ¶ 47.

Exhibit B—Part III of the Lease, states:

The following entities . . . shall be named as additional insureds (the "Additional Insureds") as required by this Lease. . . . 5. The entities listed below: Abeken Apartments, LP c/o C&C Apartment Management LLC, 1735 Park Avenue, Suite 300, New York, NY 10035.

JSUF ¶ 48.

3

## II.    The Underlying Action

On or about January 31, 2022, Gaines Hearns ("Hearns") commenced an action in New York State Supreme Court, Bronx County against Abeken and Blended Family, for injuries he allegedly suffered on October 28, 2021, while working for Verizon Services ("Verizon") at the Premises.  JSUF ¶ 1; Dkt. No. 33-1.  Hearns alleged that he was lawfully and carefully working upon the Premises when his ladder started to shift causing him and the ladder to fall, causing him serious injuries.  Dkt. No. 33-1 ¶ 83.  Hearns alleged that "[t]he ladder he was working upon was unsecured and unstable and suddenly shifted or otherwise moved, causing [Hearns] and the ladder to fall."  *Id.* ¶ 87.  The state court complaint included allegations in the alternative as to both Abeken and Blended Family.  It alleged that Abeken and Blended Family owned the real property, together with the building and improvements located thereon, at the Premises.  *Id.* ¶¶ 9, 17.  The state court complaint also alleged that Blended Family "was a lessee" of the Premises and "hired and/or retained Verizon Services for Verizon Services to perform work, labor and/or services at [the Premises]."  *Id.* ¶¶ 31, 76; JSUF ¶ 5.  It also alleged that Abeken "was a lessee of the [Premises]" and "hired and/or retained Verizon Services for Verizon Services to perform work, labor and/or services at [the Premises]."  Dkt. No. 33-1 ¶¶ 21, 57; JSUF ¶ 6.  Hearns alleges that Blended Family had the "non-delegable duty to see that the work site at the Premises was kept reasonably safe and free of dangers and hazards to those workers lawfully threat." Dkt. No. 33-1 ¶ 72; JSUF ¶ 7.  Hearns also alleges that Abeken "had the non-delegable duty to see that the work site at the Premises was kept reasonably safe and free of dangers and hazards to those workers lawfully threat."  Dkt. No. 33-1 ¶ 53; JSUF ¶ 8.  Hearns alleged claims for negligence, Dkt. No. 33-1 ¶¶ 1–94, violation of New York Labor Law ("NYLL") § 200, *id.* ¶¶ 95–100, NYLL § 240(1), *id.* ¶¶ 101–105, NYLL § 241(6), *id.* ¶¶ 106–110, and violation of Industrial Code Rule 23, *id.* ¶¶ 111–15.  JSUF ¶ 12.

On October 19, 2022, Hearns submitted a Verified Bill of Particulars alleging that the accident took place on October 28, 2021, at approximately 12:00 p.m. in the basement of the Premises. Dkt. No. 33-2 ¶¶ 1–2; JSUF ¶ 13. He stated that he was "on an a-frame ladder performing his work duties while installing an ethernet cable when he was caused to fall." Dkt. No. 33-2 ¶ 4; JSUF 13.

According to the deposition testimony Hearns gave in the case, a daycare center hired Verizon to perform work at the center located within the building on the Premises. Dkt. No. 33-3 at 52; JSUF ¶ 18. It is undisputed that Blended Family was the daycare center and that it hired Verizon to perform work on October 28, 2021, to "run a wire for Wi-Fi in the basement." *Id.* Hearns "had to drill," "had to run wire," and "[i]nstall a router" along with "other Verizon equipment for the router to work." Dkt. No. 33-3 at 54; JSUF ¶ 19. The basement of the building on the Premises is split into two sections. JSUF ¶ 25. One side was leased to Blended Family. *Id.* The other side, not leased to Blended Family, contained the main Verizon equipment which was kept locked by the building superintendent. *Id.* ¶¶ 25, 27. To install Wi-Fi for Blended Family, Hearns had to run wire from the basement side leased to Blended Family to the basement area containing the Verizon equipment, which was not leased to Blended Family. *Id.* ¶ 34. The two portions of the basement are not connected by a door and, to enter the portion of the basement not leased to Blended Family, Hearns had to leave the portion of the Building leased to Blended Family, go outside, and enter the other side of the basement through an exterior door. *Id.* ¶ 25.

According to the building superintendent, he was the only person who could provide Hearns with access to the Verizon equipment room and Blended Family called him to tell him that Verizon needed access to the telecommunications room so that they could connect to the

internet.  Dkt. No. 33-4 at 38, 40; JSUF ¶¶ 28–29.  The building superintendent provided Hearns with access to the portion of the basement that contained the Verizon equipment.  Dkt. No. 33-4 at 38; Dkt. No. 33-3 at 60–61; JSUF ¶¶ 30, 33.  Hearns testified that, once in the basement area containing the Verizon equipment, Hearns climbed a ladder and started pushing up the drop ceiling tile to make a way to run the wire from the area leased to Blended Family.  Dkt. No. 33-3 at 80; JSUF ¶ 37.  While doing so, the ladder shifted and it and Hearns fell, causing Hearns' injuries.  Dkt. No. 33-3 at 85; JSUF ¶ 40.  There is a dispute of fact whether Abeken provided Hearns the ladder.  *See* Dkt. No. 33-3 at 72; JSUF ¶¶ 38–39 (Hearns' testimony that building superintendent provided the ladder); Dkt. No. 33-4 at 88, JSUF ¶¶ 31–32 (superintendent testimony that he did not supply any ladders to vendors working in the building and did not provide Hearns with a ladder).  Blended Family testified that no one from Blended Family provided the ladder.  Dkt. No. 33-6 at 55–56; JSUF ¶ 36.

The Demised Premises did not include the area of the basement that contained the Verizon equipment room.  JSUF ¶ 42.

Discovery is now complete in the Underlying Action.  *Id.* ¶ 64.  Hearns moved for summary judgment on liability as to Hearns' NYLL § 240(1) claim against Abeken and Blended Family.  *Id.* ¶ 65.  Abeken moved for summary judgment against Hearns, seeking the dismissal of the complaint, and for summary judgment on its contractual indemnification claim against Blended Family.  *Id.* ¶ 66.  Blended Family cross-moved for summary judgment against Hearns, seeking the dismissal of the complaint.  *Id.* ¶ 67.  On December 30, 2024, the court in the Underlying Action issued a Decision and Order resolving the pending motions.  *Id.* ¶ 69.  The court granted Blended Family's cross-motion for summary judgment against Hearns.  Dkt. No. 33-22 at 8; JSUF ¶ 74.  It found that Hearns was "not a covered worker for purposes of [NYLL]

6

§ 240(1)" and thus dismissed Hearns' NYLL § 240(1) claim against Blended Family and Abeken.  Dkt. No. 33-22 at 5–6; JSUF ¶ 72.  It also dismissed Hearns' NYLL § 200 and/or common law negligence claim against Blended Family.  Dkt. No. 33-22 at 8; JSUF ¶ 73.  The court denied Abeken's motion for summary judgment on the negligence claim, finding that there existed issues of fact, but ruled that Abeken was entitled to conditional summary judgment on its contractual indemnification claim against Blended Family pending the determination of Abeken's negligence under the common law.  Dkt. No. 33-22 at 6–7; JSUF ¶ 70.

Hearns has filed a notice of appeal from each and every part of the Decision and Order that is adverse to him.  *Id.* ¶ 78.  Blended Family has filed a notice of appeal from the portions of the Decision and Order that conditionally granted Abeken's motion for summary judgment on its contractual indemnification claim and denied Abeken's motion for summary judgment on Hearns' common law negligence claim.  *Id.* ¶ 76.  Blended Family also has filed a motion for leave to reargue as to Abeken's motion for summary judgment on its contractual indemnification claim and Abeken's motion for summary judgment on Hearns's common law negligence claim. *Id.* ¶ 77.

## III.    The Policies

Greater New York insures Abeken under Commercial General Liability Coverage Policy No. 1131M23422, effective from November 1, 2020 to November 1, 2021.  JSUF ¶ 55.  USLIC insures Blended Family under Commercial General Liability Coverage Policy No. CP 1659352D effective from September 13, 2021 to September 13, 2022.  *Id.* ¶ 49. Blended Family is the named insured under the USLIC Policy.  *Id.* ¶ 51.  Abeken is an additional insured under the USLIC policy pursuant to an "Additional Insured—Managers or Lessors of Premises" endorsement and schedule.  *Id.* ¶ 52.

The GNY Policy contains an "Amendment Of Other Insurance Condition (Occurrence Version)" endorsement which modified the "Other Insurance" clause in the GNY Policy and states in pertinent part:

> Paragraph 4.b of the Other Insurance Condition—(Section IV—Commercial General Liability Conditions) is replaced by the following:
>
> b.      Excess Insurance
>
> This insurance is excess over:
>
> . . .
>
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or products or completed operations, for which you have been added as an additional insured by attachment of an endorsement.
>
> (3) Any other primary insurance available to you that covers liability for damages arising out of the premises or operations, or products or completed operations, for which another party has agreed under contract to indemnify you or hold you harmless.

JSUF ¶ 60.

The "Additional Insured—Managers or Lessors of Premises" endorsement and schedule of the USLIC Policy, which names Abeken as an additional insured, states:

> Who is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule . . .

JSUF ¶ 52.

The USLIC Policy also contains a "Primary and Non-Contributory—Owners or Lessors Of Premises" endorsement and schedule, naming Abeken, and stating in pertinent part:

> The coverage afforded by this policy to any owners or lessor(s) of premises, scheduled above and who are additional insureds under this policy, is primary and non-contributory if:
>
> 1. This insurance is required to be primary and non-contributory under a written contract; and

2. The loss to be covered occurs on or after the effective date of the written contract; and

3. The loss to be covered was caused solely and exclusively by your acts or omissions or the acts or omissions of those acting on your behalf in connection with the use or control of that part of the premises leased to you under the written contract referred to above.

JSUF ¶ 53.

The USLIC Policy also contains an "Other Insurance" clause which states in pertinent part:

a.   Primary Insurance

This insurance is primary except when Paragraph b. below applies . . .

b.  Excess Insurance

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I—Coverage A—Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

JSUF ¶ 54.

## PROCEDURAL HISTORY

This case was commenced by Greater New York by summons and verified complaint filed in New York State Supreme Court, New York County, on or about March 28, 2024.  Dkt. No. 1 ¶ 1; Dkt. No. 1-1.  Greater New York seeks a declaratory judgment that it has no duty to defend or indemnify Abeken and reimbursement from USLIC for all defense-related costs and expenses it paid on behalf of Abeken in connection with the Underlying Action or equitable contribution from USLIC in connection with those defense-related costs and expenses.  Dkt. No. 1-1 ¶¶ 26–53.

On May 10, 2024, USLIC removed the action to this Court, pursuant to 28 U.S.C. §§ 1441 and1446, on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  Dkt. No. 1.

Greater New York filed its motion for summary judgment, supported by a joint statement of undisputed facts pursuant to Local Civil Rule 56.1 and accompanying exhibits and a memorandum of law in support of the motion on May 21, 2025.  Dkt. Nos. 32–34.  Greater New York seeks an order declaring that USLIC has a duty to defend and to indemnify Abeken in relation to the Underlying Action, that primary and non-contributory coverage is afforded under the USLIC Policy for Hearns' claims and damages asserted in the Underlying Action, and that Greater New York is entitled to reimbursement from USLIC for defense costs incurred in defending Abeken in relation to the Underlying Action.  Dkt. No. 32.

That same day, USLIC also filed a motion for summary judgment supported by a memorandum of law.  Dkt. Nos. 35–36.  USLIC seeks an order dismissing Greater New York's complaint.  Dkt. No. 35.

On June 4, 2025, Greater New York and USLIC each filed memoranda of law in opposition to the motions for summary judgment.  Dkt. Nos. 37–38.[1]

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'"  *Id.* at 114 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  In deciding a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor."  *Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73 (2d Cir. 2016).

"If, as here, 'both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it.'"  *Equinox F&B, Inc. v. Roots Pressed Juices LLC*, 2024 WL 2240230, at *8 (S.D.N.Y. May 17, 2024) (quoting *Heublin, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).  "When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other."  *Heublin, Inc.*, 996 F.2d at 1461; *accord Morales v. Quintel Ent. Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).  "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales*, 249 F.3d at 121.

---

[1] The case was reassigned to the undersigned on February 25, 2026.  Feb. 25, 2026 Minute Entry.

"Summary judgment is particularly appropriate in resolving insurance coverage disputes, because the interpretation of an insurance policy presents a question of law." *Constitution Reins. Corp. v. Stonewall Ins. Co.*, 980 F. Supp. 124, 127 (S.D.N.Y. 1997), *aff'd*, 182 F.3d 899 (2d Cir. 1999); *see also United Cap. Corp. v. Travelers Indem. Co. of Ill.*, 237 F. Supp. 2d 270, 274 (E.D.N.Y. 2002) ("Summary judgment is a particularly appropriate vehicle for resolving insurance coverage disputes."). "[D]eclaratory judgment actions involving insurance policies are routinely resolved on summary judgment, in which case a jury trial would be unnecessary." *In re Purdue Pharma L.P.*, 2021 WL 5178698, at *6 (S.D.N.Y. Nov. 8, 2021).

## DISCUSSION

"An insurance agreement is subject to principles of contract interpretation." *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017) (quoting *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 37 N.E.3d 78, 80 (N.Y. 2015)). "As with the construction of contracts generally, 'unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court.'" *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 884 N.E.2d 1044, 1047 (N.Y. 2008) (quoting *White v. Cont'l Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007)). "[C]ourts should read a contract as a harmonious and integrated whole to determine and give effect to its purpose and intent." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*, 92 N.E.3d 743, 747 (N.Y. 2017) (quotations omitted). "Courts may not, through their interpretation of a contract, add or excise terms or distort the meaning of any particular words or phrases, thereby creating a new contract under the guise of interpreting the parties' own agreements." *Id*. at 748. "In that regard, a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision 'meaningless or without force or effect.'" *Id*. (quoting *Ronnen v. Ajax Elec. Motor Corp.*, 671 N.E.2d 534, 537 (N.Y. 1996)).

The principal issue raised by this case relates to the interpretation and application of the USLIC Policy endorsement language that Abeken is an additional insured "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule." Dkt. No. 33 ¶ 52. USLIC argues that the language "focus[es] on the location of the accident and the tenant's rights and responsibilities as to that location" and that "if the tenant did not have access to the location or any obligation to maintain that location, . . . the tenant's insurer does not have any obligation to defend or indemnify the property owner as an additional insured." Dkt. No. 36 at 2. It claims that because Hearns' injury did not occur in an area that Blended Family had "a right to access or use" or "an obligation to maintain in any respect" and because Hearns' injury did not involve an area of the Building that could be regarded as "by implication" part of the Demised Premises, USLIC does not have a duty to defend or indemnify Abeken. *Id.* at 12. Greater New York claims that it is sufficient that the area where the injury occurred was one that was necessary for Blended Family's use of the Demised Premises. Dkt. No. 34 at 20. Greater New York contends that since Blended Family had the right to make, at its own expense, "alterations, installations, additions, or improvements which [we]re non-structural" to the Demised Premises and since to install the router in the basement it was necessary to run wire from the basement side leased to Blended Family to the basement side not leased to it and which contained the Verizon equipment, the accident arose out of Blended Family's use of the premises leased to it. Dkt. No. 37 at 6. It also contends that, regardless of the Court's conclusion with respect to the duty to indemnify, USLIC had a duty to defend based on the language of the complaint in the Underlying Action alone. Dkt. No. 34 at 16–17; Dkt. No. 37 at 2–5. The Court will address the duty to defend and the duty to indemnify in turn.

13

## I.    Duty to Defend

"In New York, an insurer's duty to defend is 'exceedingly broad.'" *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006)).  The duty to defend has been described as a form of "litigation insurance." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 871 N.E.2d 1128, 1132 (N.Y. 2007) (quotation omitted).  "An insurer may refuse to defend '*only if* it could be concluded as a matter of law that there is *no possible* factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82 (2d Cir. 2013) (emphasis added) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441, 444 (N.Y. 1985)).

"New York courts look to two sources of information to determine whether there is a possible factual or legal basis for an obligation to defend." *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 323–24 (S.D.N.Y. 2020).  First, under the "four corners" rule, "[a]n insurer's duty to defend 'arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim.'" *Worth Const. Co. v. Admiral Ins. Co.*, 888 N.E.2d 1043, 1045 (N.Y. 2008) (quoting *Frontier Insulation Contractors v. Merchants Mut. Ins. Co.*, 690 N.E.2d 866, 869 (N.Y. 1997)).  Those allegations must be "liberally construed" and "[a]ny doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier." *Euchner-USA, Inc.*, 754 F.3d at 141 (quoting *Brook Shopping Ctr. v. Liberty Mut. Ins. Co.*, 439 N.Y.S.2d 10, 12 (1st Dep't 1981)).  "[A]n insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage.'" *Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006) (quoting *Cont'l Cas. Co.*

14

*v. Rapid–American Corp.,* 609 N.E.2d 506, 508 (N.Y. 1993)).  "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be."  *Id.* (quoting *Ruder & Finn v. Seaboard Sur. Co.,* 422 N.E.2d 518, 521 (N.Y. 1981)).  "[A] liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered."  *Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 90 (N.Y. 1991); *see also Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d 167, 170 (N.Y. 2002) ("The merits of the complaint are irrelevant, and '[a]n insured's right to be accorded legal representation is a contractual right and consideration upon which his premium is in part predicated, and this right exists even if debatable theories are alleged in the pleading against the insured.'" (quoting *Int'l Paper Co. v. Cont'l Cas. Co.,* 320 N.E.2d 619, 621 (N.Y. 1974))).

Second, because "the duty to defend derives, in the first instance, not from the complaint drafted by a third party, but rather from the insurer's own contract with the insured," *Fitzpatrick*, 575 N.E.2d at 93, the Court is also obligated to examine the information possessed by the insurer, *see id.* at 93–94.  Thus, even when the complaint itself does not contain facts or law suggesting a possibility of coverage, the insurer is required "to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage."  *Id.* at 93; *accord High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 98 (2d Cir. 2018) (quoting *Fitzpatrick*, 575 N.E.2d at 93).  "[D]eposition testimony" can provide an insurer "with knowledge of facts establishing a reasonable possibility of coverage."  *Auriemma v. Biltmore Theatre, LLC*, 917 N.Y.S.2d 130, 139 (1st Dep't 2011).

The meaning of the endorsement language at issue here has been the subject of extensive decisional caselaw in New York.  The term "arising out of" requires that "there be some causal relationship between the injury and the risk for which coverage is provided."  *Maroney v. N.Y. Cent. Mut. Fire Ins. Co.*, 839 N.E.2d 886, 889 (N.Y. 2005).  Ordinarily, a claim for an injury arises out of the lessee's use of the demised premises when the injury takes place in the demised premises.  *See Chappaqua Cent. Sch. Dist. v. Philadelphia Indem. Ins. Co.*, 48 N.Y.S.3d 784 (2d Dep't 2017) (finding no causal relationship between the injury and the risk for which coverage was provided for injury suffered by school employee on exterior staircase between school and building parking lot); *Wesco Ins. Co. v. Jewelers Mut. Ins. Co.*, 227 N.Y.S.3d 279 (1st Dep't 2025), *leave to appeal denied*, 44 N.Y.3d 1020 (N.Y. 2025) (no additional insured coverage where injury occurred in space to which another tenant had exclusive use and control).  "[A]n insurer does not wish to be liable for losses arising from risks associated with a premises for which the insurer has not evaluated the risk and received a premium."  *Atl. Ave. Sixteen AD, Inc. v. Valley Forge Ins. Co.*, 56 N.Y.S.3d 207, 210 (2d Dep't 2017) (quoting *N.Y. Cent. Mut. Fire Ins. Co.*, 839 N.E.2d at 889).  "That interpretation allows an insurer to reasonably define the 'universe of possibilities to which it can apply its risk analysis methods . . . and determine a premium.'"  *New York Cent. Mut. Fire Ins. Co.*, 839 N.E.2d at 889 (quoting 7 Jordan R. Plitt et. al. *Couch on Insurance* § 101:40 (3d ed. 2025)).

However, "the perimeters of the coverage afforded under the policy [is] viewed not in strictly territorial terms but rather in operational terms covering the extent of control over the premises" necessarily implied by the lease.  *ZKZ Assocs. LP v. CNA Ins. Co.*, 637 N.Y.S.2d 117, 118 (1st Dep't 1996), *aff'd*, 679 N.E.2d 629 (N.Y. 1997).  In *ZKZ Assocs.*, for example, the owner of a building sought a declaratory judgment that it was entitled to coverage as an

additional insured under a policy issued to the company which managed a garage in the building. The accident occurred on "the part of the sidewalk used by vehicles in order to enter garage, i.e., special use of sidewalk by garage." *Id.* The court held that the plaintiff was entitled to coverage even though the accident did not occur within the metes and bounds of the demised premises. The court concluded that "without traversing sidewalk for access to and from garage, there could be no use at all of garage as parking facility; thus, special use of sidewalk for that purpose is inextricable, indivisible part of use of garage and any liability arising from such use comes within the additional insured's coverage." *Id.* The decision was affirmed by the New York Court of Appeals, which ruled that the sidewalk outside the building where the accident occurred was "by implication, 'part of the . . . premises'" of the lessee and thus came within the endorsement language because it "was necessarily used for access in and out of the garage [the lessee] operated." *ZKZ Assocs. LP v. CNA Ins. Co.*, 679 N.E.2d 629, 630 (N.Y. 1997); *see also 523 BWAY, LLC v. Erie & Niagara Ins. Ass'n*, 230 N.Y.S.3d 599, 603 (2d Dep't 2025) (concluding that parking lot was part of leased premises of dental office for purposes of additional insured coverage where "the premises w[ere] designed in such a way that anyone seeking access to the subject property must pass through the parking lot").

In *Maldonado v. Kissm Realty Corp.*, 796 N.Y.S.2d 619 (2d Dep't 2005), the owner was named as additional insured on a policy issued to a company whose lease included the exclusive use of two rooftop HVAC units. The units were the lessee's property, which it could replace with new ones at its sole cost and expense and which it had the right to remove at the end of the lease term. *Id.* at 620–21. The lease allowed the lessee to have access from the demised premises to the roof area where the units were located whenever it wished to perform maintenance services on the HVAC units. *Id.* at 621. The court held that additional insured

17

coverage applied with respect to injuries suffered by a person hired by the lessee to do maintenance work on the HVAC units on the rooftop, ruling that while "the rooftop technically was not part of the [demised] premises" the policy should be viewed "in operational terms covering the extent of control over the premises" that the lease vested in the lessee. *Id.* (quotation omitted). *See also Mack-Cali Realty Corp. v. NGM Ins. Co.*, 990 N.Y.S.2d 253, 256 (2d Dep't 2014) (injury arose out of use of demised premises when plaintiff was injured delivering packages to lessee on a loading dock which "was necessarily used for loading and unloading deliveries intended for" lessee).

Greater New York has established its entitlement to summary judgment on its claim that USLIC had a duty to defend Abeken. "[T]he general rule in determining whether an insurer has a duty to defend is to compare the allegations of the complaint with the operative insurance policy." *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004). If based on those allegations, the risk falls within that which the insurer agreed to provide coverage, a duty to defend arises. *See Town of Massena.*, 779 N.E.2d at 170 ("If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend."). The complaint in the Underlying Action alleges facts that, if proven, would establish liability for the risk that USLIC agreed to insure. Hearns alleged: (i) Blended Family was the owner, lessor and/or lessee of the Premises on which there was an ongoing construction, renovation, alteration and/or repair project, Dkt No. 33-1 ¶¶ 17–18, 29–31; (ii) Blended Family operated, possessed, managed, maintained, controlled, and supervised the Premises, *id.* ¶¶ 32–37; (iii) Blended Family, its employees, servants, and/or agents had the non-delegable duty to see that the work site at the Premises was kept reasonably safe and free of dangers and hazards to those workers lawfully present and to provide those workers lawfully at the worksite, including

18

the plaintiff, a safe place to work and safe and proper equipment with which to work, *id.* ¶¶ 72–74; (iv) Blended Family retained Verizon to perform work, labor and/or services at the Premises, *id.* ¶ 77; and (v) that, on or about October 28, 2021, while Hearns was working on the Premises in connection with such renovation, repair and/or construction work, he suffered an injury by reason of the negligence of Blended Family and Abeken, *id.* ¶¶ 82–85.  In sum, these allegations state that Hearns was injured in connection with his work on behalf of Blended Family at a portion of the Premises that Blended Family maintained and controlled.  Such allegations need not be true.  It is sufficient that they create a possibility of "liability arising out of the ownership, maintenance, or use of that part of the premises leased to [Blended Family]," as required for Abekan to establish coverage under the USLIC Policy.  JSUF ¶ 52.

USLIC contends that the extrinsic evidence does not support Greater New York's contention that USLIC owes Abeken a duty to defend because that evidence shows that the injury did not in fact occur on the Demised Premises.  Dkt. No. 38 at 5.  That extrinsic evidence may undermine the allegations in the underlying complaint does not alter USLIC's duty to defend Abeken.  The duty to defend under New York law can be based *either* on the four corners of the complaint or on extrinsic evidence.  *Fitzpatrick* 575 N.E.2d at 92; *Ruder & Finn v. Seaboard Sur. Co.,* 422 N.E.2d 518, 521 (N.Y. 1981).  "A narrow, but widely recognized exception to the rule allows an insurer to refuse or withdraw a defense if evidence extrinsic to those sources and 'unrelated to the merits of plaintiff's action[,] plainly take the case outside the policy coverage.'"  *IBM*, 363 F.3d at 148 (quoting Allan D. Windt, *Insurance Claims and Disputes* § 4:4 (6th ed. 2025) (citing cases)).  However, "[c]ourts addressing the duty to defend have, further, made clear that, if the allegations in a complaint trigger the duty to defend, the insurer's duty *continues* until a judicial decree terminating it.  In other words, a subsequent

19

decree terminating the duty on the basis of extrinsic evidence does not *retroactively* eliminate the duty that initially arose." *City of New York v. Liberty Mut. Ins. Co.*, 2017 WL 4386363, at *14 (S.D.N.Y. Sept. 28, 2017) (Nathan, J.) (emphases in original); *accord Emps. Ins. Co. of Wausau v. Harleysville Ins. Co. of New York*, 759 F. Supp. 3d 344, 354 (E.D.N.Y. 2024), *appeal withdrawn*, 2025 WL 2656354 (2d Cir. Sept. 16, 2025); *Aspen Specialty Ins. Co. v. NCMIC Risk Retention Grp., Inc.*, 2022 WL 16837069, at *5–6 (E.D.N.Y. Nov. 9, 2022).  "Even where there exist extrinsic facts suggesting that the claim may ultimately prove meritless or outside the policy's coverage, the insurer cannot avoid its commitment to provide a defense, since '[a] complaint subject to defeat because of debatable theories . . . must [nevertheless] be defended by the insured.'" *Fitzpatrick*, 575 N.E.2d at 92 (quoting *Int'l Paper Co.,* 320 N.E.2d at 621 (N.Y. 1974)).  "[A]n insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage." *Id.*  Thus, regardless whether in fact Hearns' injury arose from the use of the Demised Premises, Abeken was entitled to a defense by USLIC as an additional insured based on the allegations of the complaint.

Additionally, USLIC's coverage of Abeken is primary to Greater NY's coverage.  *See* Dkt. No. 33-10 at 38 (noting that USLIC does not have a duty to defend where it provides only excess insurance and another insurer has a duty to defend).[2]  By the terms of the USLIC Policy, its coverage over "owners or lessor[s]" of the Premises is "primary and non-contributory" if (1) "required to be primary and non-contributory under a written contract," and (2) "[t]he loss to be covered occurs on or after the effective date" of that contract, and (3) "[t]he loss to be covered was caused solely and exclusively by your acts or omissions or the acts or omissions of those

---

[2] Citations to this docket entry use ECF pagination.

acting on your behalf in connection with the use of control of that part of the premises leased to you under" that contract.  JSUF ¶ 53.  These requirements are easily met: the written Lease requires that "the insurance coverage provided to the Additional Insureds shall apply on a primary . . . and non-contributory basis," *id.* ¶ 47; the injury occurred on October 28, 2021, almost four years following the execution of the Lease on September 12, 2017, *id.* ¶¶ 10, 41; and the state complaint alleges facts that could support a finding that the loss was caused "solely and exclusively" by Blended Family, Dkt. No. 33-1 ¶¶ 32–37, 72–74, 82–85.  To be sure, the complaint also alleges the same facts supporting liability with respect to Abeken.  But that a complaint names multiple defendants, each of whom could be found solely and exclusively liable under the complaint, does not relieve USLIC of its obligation to provide primary coverage and defense to its insured (whether the named insured or additional insured).

Accordingly, Greater New York is entitled to reimbursement of the defense costs it incurred in defending Abeken in the underlying action.  "Given [USLIC's] policy, the duty to defend is on a primary and noncontributory basis with [Greater New York's] coverage.  As [USLIC's] duty to defend on a primary basis has been triggered, [Greater New York is] also entitled to reimbursement of defense costs."  *Catlin Ins. Co. v. Colony Ins. Co.*, 234 N.Y.S.3d 15, 17 (1st Dep't 2025) (citations omitted); *see also Titan Indus. Servs. Corp. v. Navigators Ins. Co.*, 203 N.Y.S.3d 267, 270 (1st Dep't 2024) ("[a]s Navigators' duty to defend on a primary basis has been triggered, plaintiffs are also entitled to reimbursement of defense costs incurred from the date on which Navigators received the tender") (citation omitted); *Travelers Indemnity Co. of Am. v. NorGuard Ins. Co.*, 808 F. Supp. 3d 495, 503 (E.D.N.Y. 2025) (plaintiff-insurance company entitled to reimbursement for all defense costs after date that defendant-company denied coverage).

## II.    Duty to Indemnify

The Court reaches a different conclusion, however, as to the duty to indemnify.  The USLIC Policy covers Abeken as an additional insured, "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to [Blended Family.]"  JSUF ¶ 52.  In many cases, the Court will defer a ruling on the duty to indemnify until after liability is determined.  *See, e.g., Gemini Ins. Co. v. Titan Construction Servs., LLC*, 2019 WL 4023719, at *9 (S.D.N.Y. Aug. 27, 2019); *Speciality Nat'l Ins. Co. v. English Bros. Funeral Home*, 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009).  In this case, however, it is undisputed between the parties that Hearns' injury took place in an area outside the Demised Premises to which Blended Family had no access, *id.* ¶ 26, that Abeken kept the area in which the injury occurred locked and to which the superintendent alone could give Hearns access, *id.* ¶¶ 27, 20, and that to access the basement area where the injury occurred, Hearns had to leave the portion of the Building leased to Blended Family, go outside, and enter the other side of the basement through an exterior door, *id.* ¶ 25.  The injury was not causally related to Blended Family's "use" of the Demised Premises.  *See, e.g. Chappaqua Cent. Sch. Dist.*, 48 N.Y.S.3d at 787; *Wesco Ins. Co.*, 227 N.Y.S.3d at 281; *Town Plaza of Poughquag, LLC v. Hartford Ins. Co.*, 175 F. Supp. 3d 93, 102 (S.D.N.Y. 2016) (denying summary judgment as to duty to indemnify where sidewalk where injury occurred was "not necessary for entering the pharmacy."); *Medina v. 676 Hunts Point Realty Corp.*, 158 N.Y.S.3d 97, 99 (1st Dep't 2021) (denying summary judgment as to indemnification where "alleged accident occurred on a portion of the sidewalk that was not necessary to, or used as, the entrance and exit of the premises.").  There is thus no need to wait (nor a request to the Court that it wait).  The issue of duty to indemnify can be decided based on the undisputed facts.  *See Atlantic Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261–62 (S.D.N.Y. 2013) (noting that courts defer question of indemnification due to the

22

"different degrees of factual investigation" but where conclusion regarding duty to indemnify does not "implicate any disputed question of fact . . . it is appropriate" to declare the scope of the duty); *cf. Am. Auto. Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp. 2d 454, 465 (E.D.N.Y. 2012) (noting a decision on the duty to indemnify is premature where issue "depends on facts that will be decided in the underlying state action.").

Greater New York does not deny that the basement area where the accident occurred was not literally part of the Demised Premises for which USLIC agreed to provide insurance but argues that it was part of it "by implication," *ZKZ Assocs. LP.*, 679 N.E.2d at 630, because Blended Family had by lease the right to make "alterations, installations, additions, or improvements which [were] non-structural" to the Demised Premises based on consent which the landlord could not unreasonably withhold, JSUF ¶ 43; Dkt. Nos. 33-7, 33-8, and, in order to make those repairs, it needed access to the basement area which the Building alone controlled. Dkt. No. 37 at 6-7. It thus seeks to bring itself into the line of cases that include *ZKZ Associates*, *523 BWAY, LLC*, *Kissm Realty Corporation*, and *Mack-Cali Realty Corporation*.

The facts of the cases upon which Greater New York would rely are materially distinguishable from the undisputed facts of this case. The court's conclusion in *ZKZ* turned upon the conclusion that the portion of the sidewalk at issue was an "inextricable, indivisible part of the use of the garage." *ZKZ Associates LP*, 637 N.Y.S.2d at 118. Similarly, in each of the other cases, the area at issue was considered to be "operationally" part of the demised premises because the demised premises could not be accessed at all without traversing them. They thus were deemed to be part of the risk which the insurer assessed and for which it was paid premiums. *See 523 BWAY, LLC*, 230 N.Y.S.3d at 603 (distinguishing prior case holding that injury in parking lot did not arise from use of leased property by noting that, in contrast to that

23

case, "[h]ere, the only way to access the subject property was to cross over the parking lot"); *Kissm Realty Corp.*, 796 N.Y.S.2d at 621 (only way to access demised HVAC units on rooftop was through non-demised part of building); *Mack-Cali Realty Corp.*, 990 N.Y.S.2d at 256 ("the loading dock where the accident occurred was necessarily used for loading and unloading deliveries intended for WCE"); *see also Pixley Dev. Corp. v. Erie Ins. Co.*, 108 N.Y.S.3d 76, (4th Dep't 2019) ("the delivery driveway was necessarily used for access in and out of the Café and was thus, by implication, part of the premises that the Café was licensed to use under the lease." (cleaned up)); *Frank v. Cont'l Cas. Co.*, 999 N.Y.S.2d 836, 838 (2d Dep't 2014) ("The underlying claim arises out of the maintenance or use of the leased premises, as the sidewalk was necessarily used for access in and out of the leased building.").

In this case, by contrast, the basement area was not inextricably intertwined with the demised premises. Blended Family had no need to enter or right to enter that space to enjoy any part of the area which it leased. Moreover, while it had the right under the lease to make installations or improvements which were non-structural to the demised premises, Dkt. No. 33-7 ¶ 3, there has been no showing that Blended Family had any right to enter any other space in the building which it did not lease in order to make those non-structural alterations. Thus, in this case, as in *Chappaqua* and *Atlantic Avenue*, Blended Family's operations "merely furnished the occasion for the accident." *Christ the King Reg'l High Sch. v. Zurich Ins. Co. of N. Am.*, 937 N.Y.S.2d 290, 294 (2d Dep't 2012). The accident and the injury therefore did not arise out of the use of the demised premises, and USLIC is not obligated to indemnify Abeken here as an additional insured.

## CONCLUSION

Greater New York's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Greater New York's motion is granted as to its request for declaratory

24

judgment on its first, third, and fourth claims: that USLIC has a duty to defend Abeken in the Underlying Action, that USLIC's coverage of Abeken is primary and non-contributory, and that Greater New York is entitled to reimbursement for defense costs incurred in defending Abeken in the Underlying Action. Its motion is denied as to its second claim for declaratory judgment that USLIC has a duty to indemnify Abeken in relation to the Underlying Action.

USLIC's motion for summary judgment is GRANTED IN PART and DENIED IN PART. USLIC's motion with respect to Greater New York's second claim is granted and its motion with respect to Greater New York's first, third, and fourth claims is denied.

The Clerk of Court is respectfully directed to close Dkt. Nos. 32 and 35. The parties are directed to submit a proposed form of judgment to the Clerk of Court.

SO ORDERED.

Dated: March 25, 2026
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge

25